UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JORDEN ANTHONY POWELL,

                    Plaintiff,                    Case No. 1:22-cv-201

v.                                                Honorable Phillip J. Green

T. PAGE, et al.,

                    Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 5.)  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court is required to conduct this initial review prior to the service of the complaint.  *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).  Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff— at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may

conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

against Defendants Page, Anderson, Visser, Smith, and Davis. Plaintiff's Eighth

Amendment failure to protect claim against Defendant Williams remains.

### Discussion

I. **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of

Corrections (MDOC) at the Earnest C. Brooks Correctional Facility, (LRF) in

Muskegon Heights, Muskegon County, Michigan. The events about which she[2]

complains occurred at that facility. Plaintiff sues Deputy Warden Bobbi Smith,

Assistant Deputy Warden Paul Davis, Acting Assistant Deputy Warden T. Page,

Prison Counselor Rayana S. Williams, Resident Unit Manager Dorinda Anderson,

and Qualified Mental Health Professional Unknown Visser.

Plaintiff alleges that on November 27, 2019, she was in the shower when

another prisoner entered and pulled back her shower curtain. (ECF No. 1, PageID.5.)

That inmate "grabbed at his penis through his clothing and stepped toward

[P]laintiff[,] who was naked." (*Id.*) Plaintiff fearfully stated, "Please don't." (*Id.*) The

prisoner stopped, looked at Plaintiff, and said, "you better not say anything." (*Id.*)

The inmate left the shower room without further incident. (*Id.*) Plaintiff returned to

her cell, "shaken up and afraid to report the incident." (*Id.*)

On December 3, 2019, Plaintiff was called out to speak to Defendant Visser.

(*Id.*) During that session, Plaintiff told Defendant Visser that she had been sexually

assaulted. (*Id.*) Plaintiff contends that Defendant Visser "failed to report or take any

---

[2] Plaintiff indicates that she is a transgender female and refers to herself as "she"
and "her" throughout her complaint. (ECF No. 1, PageID.5.)

action to protect [P]laintiff from h[er] abuser," contrary to MDOC Policy Directive 03.03.140. (*Id.*)

On December 12, 2019, Plaintiff sent kites to Defendants Page and Smith regarding the sexual abuse she experienced in the shower.   (*Id.*, PageID.5–6.) Plaintiff avers that she never received a response and was not placed in protection. (*Id.*, PageID.6.)  Plaintiff also mailed a complaint to the Department of Justice, which relayed the complaint to the MDOC. (*Id.*)

On February 6, 2020, Plaintiff was transferred from LRF to the Lakeland Correctional Facility in Coldwater, Branch County, Michigan, where she was placed in solitary confinement.  (*Id.*)  The next day, she was transferred back to LRF and placed "back in her same cell that she was in prior to her transfer." (*Id.*)  On February 10, 2020, staff members told Plaintiff that Defendant Page had stated: "I'm still going to have that fag (referring to Plaintiff) transferred."  (*Id.*)

After experiencing several altercations with her cellmate, Plaintiff went to Defendant Williams on June 26, 2020, and asked to be separated from her cellmate. (*Id.*)  Defendant Williams refused to separate Plaintiff from her cellmate, Vester Mills.  (*Id.*)  Plaintiff responded that she needed to be moved.  (*Id.*)  Defendant Williams indicated that Plaintiff would only be moved if she went to solitary confinement or if her security level was increased to Level 4.  (*Id.*)  Plaintiff objected. (*Id.*)  Defendant Williams produced a safety waiver form and told Plaintiff that if she did not sign the form, she would be placed in solitary confinement and moved to Level

4, where she would lose all of her Level 2 property.  (*Id.*, PageID.7.)  Plaintiff signed the form "[i]n fear and under duress." (*Id.*)

On September 25, 2020, Plaintiff was in her cell with inmate Mills when inmate Mills began to berate Plaintiff.  (*Id.*)  Plaintiff "brushed it off."  (*Id.*)  Inmate Mills then told Plaintiff that she "was going to have to start paying dues (money or some exchange) for being in the cell."  (*Id.*)  Inmate Mills grabbed Plaintiff's buttocks. (*Id.*)  Plaintiff brushed inmate Mills' hand away, and inmate Mills swung at Plaintiff, hitting her in the face.  (*Id.*)  Plaintiff "then defended herself."  (*Id.*)  Ultimately, Plaintiff "stopped fighting and [exited] the cell and went into the restroom to catch her breath and splash water on her face and calm down."  (*Id.*)  Plaintiff observed inmate Mills "walk to the stairs and then go down the stairs to the officers['] desk." (*Id.*)  She saw that "words were exchanged" between inmate Mills, Defendant Williams, and the corrections officers.  (*Id.*)

Plaintiff was then handcuffed and taken to solitary confinement.  (*Id.*)  She claims that "prior to her incident with Mills he had a document[ed] history of having problems with cellmates which resulted in them being moved."  (*Id.*)  On October 2, 2020, Plaintiff "was found guilty of assault and battery on a prisoner."  (*Id.*)  She was sanctioned with 10 days' detention and 30 days' loss of privileges.  (*Id.*, PageID.7–8.) As a result, Plaintiff was "transferred to level 4 where she lost her job (food service lead cook), [as well as her] property, i.e., sweats, shoes."  (*Id.*, PageID.8.)

Based on the foregoing, Plaintiff asserts that Defendant Page violated her First Amendment rights by retaliating against her.  (*Id.*, PageID.8.)  She also alleges that Defendants violated her Eighth Amendment rights by failing to protect her, as well as her Fourteenth Amendment equal protection rights.  (*Id.*, PageID.8–9.)  Plaintiff seeks compensatory and punitive damages.  (*Id.*, PageID.9.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also*

7

*Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    Claims Against Defendants Anderson and Davis

Plaintiff names Anderson and Davis as Defendants but fails to include any factual allegations against them in the body of his complaint.  Plaintiff suggests that these Defendants are responsible for the overall operation of housing units and the movement and classification of prisoners.  (ECF No. 1, PageID.4.)  It appears, therefore, that Plaintiff has named these individuals as Defendants because of their respective supervisory positions at LRF.

Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899

(6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendants Anderson and Davis encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in the conduct. Indeed, she fails to allege any facts at all about Defendants Anderson and Davis's conduct. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's claims are premised on nothing more than respondeat superior liability, his action fails to state a claim against Defendants Anderson and Davis.

## B.   First Amendment Retaliation Claim

Plaintiff avers that Defendant Page violated her First Amendment rights by retaliating against her by having her transferred after she "muster[ed] up the courage to report abuse." (ECF No. 1, PageID.8.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).  Plaintiff, therefore, has sufficiently alleged facts regarding the first prong: she sent kites to Defendants Page and Smith regarding the first incident of sexual abuse.  (ECF No. 1, PageID.5.)

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396.  The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted.  The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

Plaintiff suggests that she was transferred to Lakeland Correctional Facility in response to reporting the abuse.  Ordinarily, transfers to the general population of another prison are not typically an adverse action.  *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases).  However, in *Hill v. Lappin*, 630 F.3d 468, 474–75 (6th Cir. 2010), the court held that transfer to administrative segregation or another prison's lock-down unit can be sufficient to constitute adverse action.  The *Hill* court determined that transfer to a lock-down unit at another facility is more than just a transfer, and is more akin to the transfer in *Siggers-El v. Barlow*, 412

11

F.3d 693, 701–02 (6th Cir. 2005), in which the consequence of transfer would affect the prisoner's ability to pay his lawyer, thereby affecting his access to the courts.

Here, Plaintiff avers that when she was transferred to Lakeland, she was placed in solitary confinement. (ECF No. 1, PageID.6.) Plaintiff's transfer and placement in solitary confinement, therefore, could rise to the level of adverse action. But Plaintiff fails to allege any facts that support the inference that it was Defendant Page who initiated the transfer. MDOC policy does not suggest that Defendant Page would play a particular role in a transfer decision.[3] And, although Plaintiff contends her transfer was an "adverse action" because she was housed for a day in "solitary," it is not at all clear that the decision to place Plaintiff in "solitary" for a day was a decision by Defendant Page or any other Defendant. Thus, at least from the perspective of the transferring institution, the transfer was like the transfer in *Smith*, which was not adverse action, not the transfer in *Hill*. But, whether the transfer is adverse action, Plaintiff has failed to connect the adverse action to the protected conduct.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory

---

[3] MDOC Policy Directive 05.01.140 (eff. November 1, 2017) indicates that "[t]ransfers shall be initiated by a Security Classification Committee (SCC) . . . ." *Id*., ¶ C. Plaintiff does not claim that Defendant Page served on her SCC or prompted any action by the SCC.

allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Plaintiff merely alleges the ultimate fact of retaliation in this action.  She has not presented any facts whatsoever to support her conclusion that Defendant Page had her transferred in retaliation for her report of abuse.  First, as noted above, there are no facts alleged to support the conclusion that Defendant Page initiated, or played any role in, the transfer.  Second, there is no temporal connection between the two events.  The transfer occurred a couple of months after she reported the assault.  And finally, although Plaintiff does suggest that Defendant Page bears some animus toward her, the only facts alleged regarding the source of that animus is Plaintiff's "sexuality (transgender)", (Compl., ECF No. 1, PageID.9),[4] not her temporally remote reporting of an assault.  Accordingly, Plaintiff fails to state a First Amendment retaliation claim against Defendant Page.  *See Iqbal*, 556 U.S. at 678 ("Threadbare

---

[4] Specifically, Plaintiff reports that after she returned to LRF, she was told by staff on February 10, 2020, that Defendant Page had stated, "I'm still going to have that fag (referring to Plaintiff) transferred." (ECF No. 1, PageID.6.)

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### C.    Eighth Amendment Failure to Protect Claims

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.  "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

14

Among the protections of the Eighth Amendment, inmates have a constitutionally protected right to personal safety. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  Prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). Nevertheless, "[a]lthough 'prison officials have a duty [under the Eighth Amendment] to protect prisoners from violence at the hands of other prisoners,' it is equally clear that not 'every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials.'" *Reedy v. West*, 988 F.3d 907, 912 (6th Cir. 2021) (quoting *Farmer*, 511 U.S. at 833–34 (citations and internal quotation marks omitted)).   In order to state a failure-to-protect claim, a plaintiff must demonstrate (1) that he "objectively" was "incarcerated under conditions posing a substantial risk of serious harm,"  *Farmer*, 511 U.S. at 834, and (2) that the official acted with "deliberate indifference" to inmate safety, "meaning the official was 'subjectively aware of the risk' and 'fail[ed] to take reasonable measures to abate it.'" *Reedy*, 988 F.3d at 912 (quoting *Farmer*, 511 U.S. at 829, 834, 847); *see also Greene v. Bowles,* 361 F.3d 290, 293–94 (6th Cir. 2004) (addressing whether knowing placement of a small, transgender female in a unit with a known predatory inmate amounted to deliberate indifference).  In establishing the objective prong, although a prisoner does not need to prove that she has been the victim of an actual attack to bring a personal-safety claim, she must at least establish that she reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection"

15

between the alleged violation and inmate violence to "justify a reasonable fear for personal safety").

### 1.    Incident in the Shower

As noted above, Plaintiff alleges that on November 27, 2019, another inmate sexually abused her in the shower by grabbing at his penis and stepping toward Plaintiff.  (ECF No. 1, PageID.5.)  "Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment. . . . This is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citing *Farmer*, 511 U.S. at 848–49 (discussing inmate abuse); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (same); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (abuse by guards).

With respect to Defendant Visser, Plaintiff avers that on December 3, 2019, she told Defendant Visser about the sexual assault.  (ECF No. 1, PageID.5.)  She claims that Defendant Visser failed to report the incident or take any action to protect Plaintiff from her abuser.  (*Id.*)  Plaintiff, however, fails to allege any facts plausibly suggesting that Defendant Visser was aware of any risk to Plaintiff's safety posed by the other inmate prior to the November 27, 2019, incident.  Moreover, nothing suggests that Defendant Visser was aware that the other inmate continued to pose a risk of harm to Plaintiff and deliberately ignored that risk.  *See Farmer*, 511 U.S. at 837; *see also Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011).  Indeed, Plaintiff alleges no facts suggesting that the other inmate attempted to sexually abuse her a

second time. Consequently, Plaintiff's Eighth Amendment claim against Defendant Visser will be dismissed.[5]

Plaintiff also alleges that she wrote kites to Defendants Page and Smith about the abuse and never received a response. (ECF No. 1, PageID.5–6.) Plaintiff's conclusory allegation, however, does not permit the Court to conclude that Defendants Page and Smith were aware of and consciously disregarded an excessive risk to Plaintiff's safety. *See Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67. Moreover, to the extent Plaintiff seeks to hold Defendants Page and Smith liable because of their respective supervisory positions, supervisory liability cannot be based upon the mere failure to act. *See Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Shehee*, 199 F.3d at 300. Plaintiff's Eighth Amendment claims against Defendants Page and Smith will, therefore, be dismissed.

---

[5] Plaintiff also suggests that Defendant Visser violated MDOC Policy Directive 03.03.140, which is the MDOC's policy implementing the Prison Rape Elimination Act (PREA). (ECF No. 1, PageID.5.) Plaintiff avers that Defendant Visser failed to comply with PREA because he failed to report the abuse or take any action to protect Plaintiff. (*Id.*) Plaintiff, however, "has no independent cause of action for [Defendant Visser's alleged] failure to comply with the Prison Rape Elimination Act." *Beeman v. Heyns*, No. 1:16-cv-27, 2016 WL 1316771, at *12 n.4 (W.D. Mich. Apr. 5, 2016) (citing *Montgomery v. Harper*, No. 5:14-CV-P38R, 2014 WL 4104163, at *2 (W.D. Ky. Aug. 19, 2014) ("Although not addressed in the Sixth Circuit, district courts have found that the PREA does not create a private cause of action which can be brought by an individual plaintiff.")); *see also McCloud v. Prack*, 55 F. Supp. 3d 478, 482 n.2 (W.D.N.Y. 2014) ("'[N]othing in the statute suggests that PREA intended to establish a private cause of action for allegations of prison rape, and every court to address the issue has determined that PREA cannot support such a cause of action by an inmate.'") (quoting *Amaker v. Fischer*, No. 10-CV-0977, 2014 WL 4772202, at *14 (W.D.N.Y. Sept. 24, 2014) (collecting cases)); *Barhite v. Berghuis*, No. 1:14-cv-670, 2014 WL 4627166, at *5 (W.D. Mich. Sept. 15, 2014) ("Plaintiff's request is predicated on the assumption that the PREA provides him a cause of action for Defendants' alleged sexual assaults. It does not.").

### 2.    Plaintiff's Cellmate Issues

Plaintiff goes on to allege that after experiencing numerous altercations with her cellmate, Vester Mills, she went to Defendant Williams on June 26, 2020, and asked for a separation from Mills.  (ECF No. 1, PageID.6.)  Defendant Williams refused to separate Plaintiff from Mills.  (*Id.*)  Plaintiff responded that she needed to be moved.  (*Id.*)  Defendant Williams responded, "The only way [you're] going to move is if your security level is increased to 4 or you go to solitary confinement."  (*Id.*)  Plaintiff objected to these options.  (*Id.*)  Defendant Williams then produced a safety waiver form and told Plaintiff that if she didn't sign it, she would be placed in solitary confinement and moved to Level 4.  (*Id.*, PageID.7.)  Plaintiff signed the form "[i]n fear and under duress."  (*Id.*) Three months later, on September 25, 2020, Plaintiff was in another altercation with Mills.  (*Id.*)  Afterwards, Plaintiff saw Mills approach the officers' desk and speak to the officers and Defendant Williams.  (*Id.*)  Plaintiff claims that prior to the September 25, 2020, incident, Mills had a "document[ed] history of having problems with cellmates which resulted in them being moved." (*Id.*)

As an initial matter, Plaintiff does not allege any facts from which the Court could infer that Defendant Williams was aware of Mills' documented history of having issues with his cellmates or that the documented history was characterized by violence.   Plaintiff alleges only that she made Defendant Williams aware of "numerous altercations with [Mills]"—whatever form those altercations may have taken—and that Defendant Williams refused to separate her from Mills unless Plaintiff went to solitary confinement or had her security level increased to Level 4. Plaintiff signed a safety waiver form "[i]n fear and under duress."   Thereafter,

Plaintiff was assaulted by Defendant Mills. Construed liberally, Plaintiff's allegations may set forth a plausible Eighth Amendment failure to protect claim against Defendant Williams.

### D.     Fourteenth Amendment Equal Protection Claim

Plaintiff also alleges that Defendant Page violated the Fourteenth Amendment by denying her equal protection based upon her sexuality and status as a transgender woman.  (ECF No. 1, PageID.9.)  Plaintiff's conclusory allegation is not specifically tied to particular conduct by Defendant Page, but the Court concludes that Plaintiff is alleging that her transfer to Lakeland was motivated by Defendant Page's discriminatory intent.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws[,]" which is essentially a direction that all persons similarly situated should be treated alike.  U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  To establish a violation of the Equal Protection Clause, an inmate must show that the defendant purposefully discriminated against her.  *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).  Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265–66.

In support of her claim, Plaintiff alleges that on February 10, 2020, staff members told her that Defendant Page stated, "I'm still going to have that fag (referring to Plaintiff) transferred."  (ECF No. 1, PageID.6.)  Although the use of a slur in referring to Plaintiff occurred after the purportedly discriminatory action,

Plaintiff's allegation permits the inference that Defendant Page bore a discriminatory animus toward Plaintiff.  The allegations fall short, however, in showing that the animus resulted in some action on Defendant Page's part. As set forth above, Plaintiff has failed to allege facts from which the Court might infer that Defendant Page caused or participated in the decision to transfer Plaintiff to Lakeland.  Consequently, her Fourteenth Amendment claim against Defendant Page will be dismissed.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Page, Anderson, Visser, Smith, and Davis will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Plaintiff's Eighth Amendment failure to protect claim against Defendant Williams remains.

An order consistent with this opinion will be entered.


Dated:   May 11, 2022                          /s/ Phillip J. Green
                                               PHILLIP J. GREEN
                                               United States Magistrate Judge